UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JANE DOE,

        NO. CIV. S-09-764 FCD/KJN

    Plaintiff,

  v.                      MEMORANDUM AND ORDER

UNIVERSITY OF THE PACIFIC,

    Defendant.

----oo0oo----

    This matter is before the court on defendant University of the Pacific's ("defendant" or the "University") motion for attorneys' fees pursuant to 42 U.S.C. § 1988(b) and/or 28 U.S.C. § 1927 and the court's inherent power.  Defendant contends an award of $133,099.50 is warranted either against plaintiff Jane Doe ("plaintiff") personally, pursuant to Section 1988(b), or alternatively, against plaintiff's counsel pursuant to Section 1927 or the court's inherent power, because as of the close of discovery, it was apparent that plaintiff's claims for relief were "plainly frivolous."  This case arises out of the student plaintiff, a University women's basketball team member's, alleged

1

sexual assault by three members of the University's men's basketball team.  Plaintiff's friends informed the University of the assault, and thereafter, the University provided support to plaintiff, investigated the incident, convened a disciplinary board hearing, punished the three male students based on the board's findings, expelling one student and suspending the other two, and precluded all post-suspension contact with plaintiff as well as limited interaction generally between the men's and women's basketball teams, due to tensions that had arisen between the teams after the incident.

By this action, plaintiff claimed the University violated Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), because it (1) did not prevent the assault (first claim for relief); (2) demonstrated "deliberate indifference" to sexual harassment in failing to respond appropriately to her report of the assault (second claim for relief); and (3) retaliated against plaintiff by instituting the policy limiting unsupervised social interaction between the men's and women's basketball teams (third claim for relief).

On September 17, 2010, the court granted defendant's motion for summary judgment in its entirety.  (Docket #70, filed under seal.)  Defendant now moves for an award of fees, largely encompassing the attorneys' fees it incurred in bringing the motion for summary judgment, arguing that after the close of discovery, plaintiff and her counsel knew the claims for relief in this case were baseless yet they continued to pursue this action.

The court heard oral argument on the motion on December 3, 2010.  For the reasons set forth below, the court DENIES defendant's motion for an award of attorneys' fees.  At bottom, defendant asks this court to award fees simply because it succeeded on the motion for summary judgment; however, the law does not permit an award of fees on that ground.  Instead, fees may be awarded against a plaintiff only where the defendant demonstrates the plaintiff's action was frivolous, unreasonable or wholly without foundation.  Such is clearly not the case here.  For similar reasons, an award of fees against plaintiff's counsel is not permitted by Section 1927 or warranted under the court's inherent power.  While ultimately plaintiff's attorneys were unable to assert viable claims on behalf of their client, the court cannot find that counsel acted unreasonably or vexatiously in attempting to do so.  Sanctions under Section 1927 are justified only in the most egregious of cases, which this case certainly is not.

**BACKGROUND**

The factual background underlying this case is fully outlined in the court's order granting summary judgment in favor of defendant, and thus, the court will not repeat the facts herein.  (Docket #99.)

This case was originally filed on March 18, 2009.  Defendant answered the complaint on May 26, 2009, and the court entered a scheduling order on June 8, 2009.  (Docket #s 24, 26.)  For seven months, the parties engaged in extensive discovery.  Thereafter, in compliance with the court's scheduling order setting a dispositive motion deadline of June 4, 2010, defendant filed its

1  motion for summary judgment on May 7, 2010.  (Docket #46.)

2  The motion was continued for hearing to September 10, 2010, and on that day, the court heard argument from counsel for nearly an hour on the motion.  Following the hearing, on September 17, 2010, the court issued a 42-page memorandum and order, granting defendant's motion for summary judgment.  The court found that under Title IX's stringent standards, each of plaintiff's claims failed as a matter of law.

More specifically, the court held that with respect to plaintiff's first claim for relief, the University took steps to generally ensure the safety of its students, and plaintiff could not establish the University's liability based on an alleged assault of a former female student which occurred a month prior to plaintiff's assault.

Further, the court held as to plaintiff's second claim for relief, the University responded reasonably to plaintiff's report of the assault: it conducted a fair and impartial judicial hearing, pursuant to University procedures, and Title IX did not mandate a particular remedy as urged by plaintiff.  The court could not second-guess the severity of the punishment imposed by the University on plaintiff's alleged assailants, and thus, plaintiff had not shown the requisite "deliberate indifference" to establish liability against the University.

Finally, the court held the University's decision to restrict the basketball teams' unsupervised interactions did not constitute a disadvantageous, retaliatory action sufficient to support a Title IX claim since the undisputed evidence demonstrated that the decision was designed to alleviate the

4

1  rising tension among the players and to protect plaintiff from
2  the wrath of players who did not believe her.  (Docket #99).
3       Defendant now moves for an award of attorneys' fees, arguing
4  that since the time discovery closed, plaintiff and her counsel
5  knew plaintiff could not prevail and should have voluntarily
6  dismissed the case, but instead, defendant argues, they continued
7  to pursue knowingly baseless claims.  Defendant seeks an award of
8  fees against plaintiff or alternatively against her attorneys.

**STANDARD**

**1.   Section 1988(b)**

Section 1988(b) states in relevant part:

> In any action or proceeding to enforce a provision of
> . . . [Title IX] [20 U.S.C.A. § 1681 et seq.] . . . the
> court, in its discretion, may allow the prevailing
> party, other than the United States, a reasonable
> attorney's fee as part of the costs . . .

42 U.S.C. § 1988(b).  Under § 1988 jurisprudence, a prevailing defendant is treated differently from a prevailing plaintiff and fees are not awarded routinely or simply because defendant succeeds.  See Patton v. County of Kings, 857 F.2d 1379, 1381 (9th Cir. 1988).  To be awarded fees, a prevailing defendant must demonstrate "plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith."  Christiansburg Garment Co. v. Equal Empl. Opp. Comm'n, 434 U.S. 412, 421 (1978).  This standard is "stringent," Hughes v. Rowe, 449 U.S. 5, 14 (1980), and the Ninth Circuit repeatedly has recognized that attorneys' fees in civil rights cases "'should only be awarded to a defendant in exceptional circumstances.'"  Saman v. Robbins, 173 F.3d 1150, 1157 (9th Cir. 1999) (quoting Barry v. Fowler, 902 F.2d 770, 773 (9th Cir.

5

1990)); see also Herb Hallman Chevrolet, Inc. v. Nash-Holmes, 169 F.3d 636, 645 (9th Cir. 1999); Brooks v. Cook, 938 F.2d 1048, 1055 (9th Cir. 1991).

In assessing whether to award attorneys' fees, the Ninth Circuit instructs courts to "consider the financial resources of the plaintiff in awarding fees to a prevailing defendant" because "the award should not subject the plaintiff to financial ruin." Miller v. Los Angeles County Bd. of Educ., 827 F.2d 617, 621 (9th Cir. 1987); see also Patton, 857 F.2d at 1381 (applying the Miller standard to a case in which plaintiff was represented by counsel).

**2.    Section 1927**

Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Section 1927 sanctions are appropriate when there is no obvious violation of the Federal Rules, but where, within the rules, the proceeding is conducted in bad faith for the purpose of delay or increasing costs.  In re Yagman, 796 F.2d 1165, 1187 (9th Cir. 1986), as amended, 803 F.2d 1085 (9th Cir. 1986).  In order to impose sanctions under Section 1927, the court must find that (1) the attorney multiplied the proceedings; (2) the attorney's conduct was unreasonable and vexatious; and (3) the conduct resulted in an increase in the cost of the proceedings. B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002).  An attorney's conduct is vexatious or unreasonable where he acts recklessly, with knowledge.  Id.;

6

New Alaska Develop. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989).

### 3. Inherent Power

Additionally, a federal court also has inherent power to impose sanctions against both attorneys and parties for bad faith conduct in litigation, even if the conduct is sanctionable under other rules such as Rule 11 or Section 1927. Chambers v. Nasco, Inc., 501 U.S. 32, 43 (1991). However, a court must make a specific finding of bad faith to support sanctions pursuant to its inherent power. Id. "Bad faith" conduct includes findings that a lawyer or party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." Id. at 45-46. Recklessness combined with other factors such as frivolousness, harassment, or an improper purpose, may constitute bad faith warranting sanctions under a court's inherent power. B.K.B., 276 F.3d at 1106.

**ANALYSIS**

### 1. Section 1988(b)

Preliminarily, the court emphasizes that an award of attorneys' fees to a prevailing defendant in a Title IX case must be granted *with exceeding caution* so as not to unduly chill civil rights litigation. While § 1988(b) serves as a deterrent against frivolous litigation, the Congressional policies which underlie civil rights statutes, such as Title IX, include "vigorous prosecution of civil rights violations." See Miller, 827 F.2d at 619. The Supreme Court teaches that civil rights plaintiffs often secure important social benefits beyond the individual remedy. Riverside v. Rivera, 477 U.S. 561, 573 (1986). Thus, attorneys' fees to a prevailing defendant in civil rights

7

litigation should be awarded only in *extraordinary circumstances* so as not to conflict with settled precedent and Congressional policy.

Additionally, as emphasized in <u>Miller</u>, district courts may consider a plaintiff's financial resources in deciding whether to award a defendant attorneys' fees.  827 F.2d at 620 (emphasizing that courts should be particularly wary of granting attorneys' fees to defendants after adjudication of civil rights claims when the fee request is sizable and would "subject the plaintiff to financial ruin"); <u>but see</u> <u>Patton</u>, 857 F.2d at 1382 (cautioning that courts should not refuse to grant attorneys' fees awards to a prevailing defendant "solely on the ground of the plaintiff's financial situation").  Here, plaintiff, a college student, attests that she is without any steady source of income; she no longer has a scholarship (which had been awarded by defendant University) for tuition for school, and she has applied for financial aid to assist her in paying for her education.  She states: "I do not have the financial resources to pay even the thirteen thousand dollars in costs assessed against me let alone the amount of attorney fees requested by my former University in their motion."  (Pl.'s Decl., filed *under seal* [Docket #85-1], Nov. 8, 2010.)[1]  Under these facts, the court can easily find that an award of more than $130,000.00 in fees to defendant would unduly burden the student plaintiff.  While the court recognizes

---

[1] Pursuant to plaintiff's declaration, filed Dec. 7, 2010 [Docket #97], agreeing, in part, to the unsealing of the record, the court reveals this portion of her previously sealed declaration submitted in opposition to defendants' motion for attorneys' fees.

8

that this factor alone cannot justify the denial of fees, coupled with the possible chilling effect of such an award on future civil rights cases, it strongly supports denial of the university's fees' motion against its former student.

As to the substantive merits of plaintiff's action, the Ninth Circuit has held that an action "becomes frivolous when the result appears obvious or [a party's] arguments are wholly without merit." Galen v. County of Los Angeles, 477 F.3d 652, 666 (9th Cir. 2007). In this case, the result of plaintiff's action was not obvious, and plaintiff's arguments in opposition to summary judgment were not wholly without merit. Indeed, the lengthy hearing on the motion and this court's 42-page memorandum and order evidences this fact. See e.g. Jane L. v. Bangerter, 61 F.3d 1505, 1513 (10th Cir. 1995) (recognizing that claims that receive "careful consideration," especially as evidenced by lengthy, detailed, and reasoned orders and opinions, are not frivolous). In each respect, plaintiff alleged cogent theories for her Title IX claims. Although, because of a failure of proof, the court granted summary judgment in favor of defendant. Contrary to defendant's more recent protestations,[2] that ultimate finding does not mandate an award of fees to defendant. Patton, 857 F.2d at 1381 (defeating a claim on summary judgment, by itself, does not entitle a defendant to an award of fees).

While plaintiff was unable to proffer evidence sufficient to raise a triable issue of fact on any of her claims for relief,

---

[2] At no time prior to this motion for an award of attorneys' fees did the University suggest plaintiff's claims were frivolous.

9

that failure does not demonstrate that her claims for relief were legally baseless. Title IX's standards are stringent (see Docket #70 at 24-26), and with respect to each claim for relief, plaintiff offered evidence in support of her claimed violations of law. In the court's view, however, that evidence was insufficient under the controlling law to show "deliberate indifference" by the University or any retaliatory conduct.

For example, the court concluded as a matter of law that the University's response to the earlier "Former Student" assault was reasonable, such that plaintiff had not shown the University acted with deliberate indifference in failing to prevent her assault a month later. (Id. at 26-28.) The court did not suggest much less conclude that plaintiff's first claim for relief was frivolous or legally untenable; instead, the court discussed at length the evidence plaintiff proffered and explained why, in the court's view, the evidence was insufficient to support a finding of deliberate indifference. (Id.) The court recognized that "at best," plaintiff's evidence suggested the University acted *negligently,* but it emphasized that Title IX demanded more--a showing of deliberate indifference--to find a University liable. (Id. at 29-30.) That this court was not, in the end, persuaded by plaintiff's arguments does not dictate an award of fees to defendant. To so hold otherwise would improperly award fees to defendant simply because it prevailed on summary judgment.

Similarly, while the court disagreed with plaintiff's claim that the University acted deliberately indifferent based on its

10

failure to expel all three of her assailants (id. at 35),³ plaintiff did not base her second claim for relief solely on that conduct.  She also asserted that the University acted deliberately indifferent to her report of the assault based on the University's conduct during the administrative hearing.  However, the undisputed evidence demonstrated that the University acted fairly in the administrative hearing; the University Board assessed the credibility of the witnesses and based upon the evidence found different levels of culpability as to each of the Respondent Students.

Plaintiff further argued that the University acted deliberating indifferent to her complaint by allowing Respondent Students to return to campus knowing that contact with plaintiff was likely, yet, failing to institute any effective and fair, remedial measures.  (Id. at 31-33.)  Again, in the end, the court was not compelled by plaintiff's evidentiary showing.  The undisputed evidence demonstrated the University acted reasonably in attempting to defuse hostility between the women's and men's basketball teams and ensure a safe transition for plaintiff back to the University.  (Id. at 36.)

Additionally, the court found that the University's policies prohibiting Respondent Students from having contact with plaintiff and precluding unsupervised social interaction between the basketball teams constituted legitimate, non-retaliatory

---

³ The court emphasized that it was well established law that a school had no obligation under Title IX to "engage in particular disciplinary action," and this court could not sit as a "Super-Administrator" and second-guess school disciplinary decisions.  (Id.)

11

conduct aimed at remedying the hostility between the teams and protecting plaintiff. The court held that plaintiff failed to offer *sufficient* evidence to the contrary, establishing that the University's proffered reasons for its policies were pretextual. (Id. at 39-41.) Although, as with her other claims, plaintiff did offer *some* evidence in support of her assertion that the University's rules were a pretext for retaliation against her for making the report against Respondent Students. The court found plaintiff's evidence insufficient under the relevant Title IX standards.[4]

Finally, in deciding whether to award fees, the court also considers defendant's own conduct over the course of this litigation. Significantly, defendant did not file a motion to dismiss. Fed. R. Civ. P. 12(b)(6). If defendant believed plaintiff's claims were truly frivolous, defendant would likely have sought dismissal, or at a minimum, narrowed the issues via such a motion. Defendant did not do so. Indeed, at no point in the course of the litigation did defendant make a Rule 11 motion or any informal request that plaintiff dismiss the lawsuit.

---

[4] In this respect, defendant's citation to Moss v. Associated Press, 956 F. Supp. 891, 894 (C.D. Cal. 1996) is wholly inapposite. There, the court found that plaintiff's *own* deposition testimony demonstrated that he knew his age discrimination claims could not be supported by the facts. The court also found that the plaintiff had failed to conduct even minimal discovery to support his continued pursuit of the action. Such is clearly not the case here.
   Additonally, Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055, 1060 (9th Cir. 2006), relied heavily on by defendant is also easily distinguishable. There, the court found that plaintiff had no cognizable theory of its case as he could not establish a "Constitutionally protected right to operate [his] preferred aircraft at [his] preferred airport." As set forth above, here, plaintiff alleged cogent theories of her case; she did not ultimately prevail due to a failure of proof.

12

Instead, defendant engaged in over six months of extensive discovery, and only after discovery closed, did it file a motion for summary judgment (just one month before the dispositive motion deadline).  From these facts, it appears defendant vigorously litigated this case as if plaintiff's claims had merit.

Nevertheless, defendant argues on the instant motion that plaintiff's case was legally baseless and *pursued vexatiously*, and it seeks to hold plaintiff responsible for attorneys' fees incurred over nearly two years defending what defendant *only now* alleges was a frivolous suit.  If plaintiff's claims were indeed frivolous from their inception, defendant would likely have brought a dispositive motion at some time much earlier in the litigation.  Defendant chose not to do so for obvious reasons.  For these same obvious reasons, the court denies defendant's motion for an award of attorney's fees under 1988(b).

**2.   Section 1927 Sanctions**

For sanctions to be warranted under Section 1927, counsel's conduct must have multiplied the proceedings unnecessarily.  On this essential requirement, defendant's motion fails.  Here, the court cannot find that plaintiff's attorneys' filing of an opposition to defendant's motion for summary judgment unnecessarily multiplied these proceedings.  As set forth above, at no time prior to the instant motion did defendant move to dismiss this case or ask plaintiff to voluntarily do so on the ground the action was legally baseless.  Instead, defendant litigated this case and moved *after* the close of discovery for summary judgment.  In support of its motion, defendant filed an

13

extensive brief with numerous supporting declarations and attachments thereto, analyzing the evidence and discussing the relevant legal authorities.  As noted above, not even in its motion for summary judgment did defendant suggest plaintiff's action was frivolous.  Plaintiff's attorneys in turn filed an extensive opposition to the motion as they were required to do. Plaintiff's attorneys did not prevail, but that fact does not dictate a finding that their opposition unreasonably multiplied the proceedings.

Moreover, even if the court found that the proceedings were somehow unnecessarily multiplied by plaintiff's counsel, defendant has not demonstrated that plaintiff's attorneys acted vexatiously in continuing to pursue plaintiff's claims in the face of defendant's dispositive motion.  Sanctions pursuant to Section 1927 must be supported by a finding of subjective *bad faith*.  New Alaska Develop. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989).  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." Estate of Blas Through Charqualaf v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986).  No facts exist in this case to make such a finding.

Rather, here, counsel brought this case on behalf of a student of the University whom the University concedes suffered a brutal assault by other students of the University.  Given these circumstances, these were emotionally charged claims which inevitably were litigated vigorously but nevertheless professionally by both sides (*e.g.*, there were no motions to

14

compel or other requests for the court's assistance in discovery during the course of this litigation).  On their face, plaintiff's claims for relief were clearly cognizable under Title IX; defendant impliedly acknowledged such as the University did not file a motion to dismiss.  The parties conducted lengthy discovery, and as is customary in most federal civil litigation, defendant moved for summary judgment after the close of discovery.  While plaintiff was not ultimately able to proffer sufficient evidence garnered through the discovery process to withstand summary judgment, that surely does not support an award of sanctions.  Nor does plaintiff's attorneys' failure to prevail on the summary judgment motion support a finding of harassment of defendant.  In short, failure to prevail on the dispositive motion does not establish any basis for sanctions.

However, defendant contends the primary basis for sanctions was not the court's ruling but plaintiff's counsel's "*misrepresentation* of the evidence" (particularly with regard to Former Student's alleged identification of her attacker). Defendant contends that such conduct is sanctionable.  Indeed, the court remarked in its order that plaintiff made certain *misstatements* regarding the evidence, using language and references which, at times, were simply not precise. "Misstatements" by an attorney in argument commonly distort the facts in favor of a client.  The court does not find such "misstatements" to be reckless conduct by an attorney.  Argument is argument.  The record is the record.  Plaintiff's counsel's conduct, here, is far different than misrepresentations of the record, itself.  Importantly, the court did not find that

15

plaintiff's counsel *misrepresented* the record.  Rather, the court found the evidence argued by both sides was clear and understandable, and the court was able to easily discern the true facts from the record notwithstanding vigorous advocacy by both sides.  This distinction is both critical and sensible when a court measures vigorous advocacy against sanctionable conduct of counsel.

Finally, the court is cognizant of the fact that defendant incurred substantial costs during the course of discovery and in moving for summary judgment.  However, unfortunately, such costs are a consequence of litigation in federal court.  See Camacho v. Bridgeport Financial, 523 F.3d 973 (9th Cir. 2008) (recognizing that under the well-established "American Rule," absent statutory authority or a contractual agreement between the parties, each party to litigation must bear its own attorneys' fees and may not recover those fees from an adversary).  Only in limited circumstances does the law permit recovery of attorneys' fees and costs by a prevailing party.  Id.  Here, as an alternative to an award of fees under Section 1988, defendant has moved for recovery of fees as a sanction against counsel.  However, awards of fees as sanctions are limited to those *rare* cases where the court found that counsel multiplied the proceedings unreasonably and vexatiously in an effort to harass or oppress an opponent. The filing of plaintiff's comprehensive opposition to defendant's comprehensive motion was required of counsel, and although plaintiff did not prevail, the court finds that plaintiff's counsel not only did not press legally baseless claims but properly and vigorously advanced plaintiff's claims.  Therefore,

16

defendant's motion for sanctions lacks merit.[5]

**CONCLUSION**

For the foregoing reasons, the court DENIES defendant's motion for attorneys' fees in its entirety.

IT IS SO ORDERED.

DATED: December 8, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[5] For the same reasons, there is no basis to award attorneys' fees as a sanction against plaintiff's counsel pursuant to the court's inherent sanctions power.